UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
XAVIER ONEIL,

                          Plaintiff,

             - against -

CORRECTIONAL OFFICER S. RODRIGUEZ,

                        Defendant.
------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

18-CV-3287 (AMD) (LB)

**ANN M. DONNELLY**, United States District Judge:

On May 30, 2018, the *pro se* plaintiff filed this action pursuant to 42 U.S.C. § 1983 against the City of New York. (ECF No. 1.) On June 19, 2018, I granted the plaintiff's motion for leave to proceed *in forma pauperis*, dismissed the City of New York as an improper defendant and added Correctional Officer S. Rodriguez as the defendant. (ECF No. 6.) The defendant moved to dismiss the complaint (ECF No. 12), and I granted the motion but allowed the plaintiff to amend his complaint (ECF No. 21). On August 7, 2019, the plaintiff filed an amended complaint. (ECF No. 25.) On October 3, 2019, the defendant moved to dismiss the amended complaint (ECF No. 28); to date, the plaintiff has not filed an opposition.[1] For the reasons that follow, I grant the defendant's motion, but allow the plaintiff to amend his complaint.

## BACKGROUND

The plaintiff claims that on August 17, 2017, he got into an argument with Officer Rodriguez in the special housing unit at the Metropolitan Detention Center while she was

---

[1] The plaintiff's opposition was originally due by November 18, 2019. (*See* October 3, 2019 Scheduling Order.) After giving the plaintiff several extensions, I gave him until August 8, 2020 to file a response. The plaintiff did not file his opposition on that date, or otherwise move the Court for an extension of time.

escorting him to the visitors' room. (ECF No. 25 at 3-4.) The plaintiff called her a "bitch," and she punched him in the face. (*Id.* at 4.) Another officer pulled the plaintiff away from Officer Rodriguez, asked him if he "was okay" and escorted him to the visitors' room. (*Id.*)

The plaintiff did not seek medical attention for the punch but says that he experienced "paranoia, mental depression" and "nervousness around other inmates [and] officers," and was "scared" for his safety. (*Id.*) When he was assaulted, he had "soreness" on the left side of his face and a "headache." (*Id.*)

"After being assaulted, taunted and threatened," the plaintiff "knew [he] had to do something;" he wrote "another letter" to the Warden, S.I.S., the SHU lieutenant and SHU officer "in charge" to explain the incident and report Officer Rodriguez's behavior. (*Id.* at 9.) When the plaintiff asked the Warden and S.I.S. if they received his letters, they said that they had not, which led the plaintiff "to believe someone was throwing [his] letters away." (*Id.*) He "told both S.I.S. and the Warden to review the cam[e]ras." (*Id.*)

According to the plaintiff, Officer Rodriguez ordered him to keep his "mouth shut," "taunted" him and called him a "snitch." (*Id.* at 4.) At one point, Officer Rodriguez came to the plaintiff's cell and "told [him] she had something for [him]," "which caused [the plaintiff] to fear for [his] safety." (*Id.* at 9.) Before he reported this "incident," multiple officers "tried to convince [him] not to talk." (*Id.*) After he reported the incident, Officer Rodriguez told other officers and inmates that he was "snitching," "which incited inmates and officers to start calling [him] a snitch." (*Id.*) On December 31, 2017, an inmate assaulted the plaintiff, and told the plaintiff "this is what [he] get[s] for snitching." (*Id.*)

The plaintiff alleges that Officer Rodriguez violated the First Amendment and the Equal Protection Clause, and "deliberate[ly] inflict[ed] . . . pain." (*Id.* at 9-10.) He maintains that

2

"[o]ther[]s similarly situated would not have been treated as [he] was because officers are not trained to act in an unfair and unprofessional manner." (*Id.* at 10.) He seeks monetary damages. (*Id.* at 5.)

## STANDARD OF REVIEW

In order to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The plaintiff is proceeding *pro se*, so I evaluate his complaint by "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and interpret it to raise the strongest arguments it suggests, especially since it alleges civil rights violations, *see Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191-93 (2d Cir. 2008); *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)).

## DISCUSSION

I construe the plaintiff's allegations liberally to raise Eighth Amendment excessive force, First Amendment retaliation and Fifth Amendment equal protection claims, pursuant to *Bivens v.*

3

*Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[2] The defendant argues that these claims constitute unwarranted extensions of *Bivens*, and that the plaintiff does not state a claim upon which relief can be granted. (ECF No. 28-2.)

## I. Availability of a *Bivens* Remedy

In *Bivens*, the Supreme Court held that a plaintiff could recover money damages for injuries caused by federal officers' violation of his Fourth Amendment rights when they searched his home and arrested him without a warrant. 403 U.S. at 397. Although Congress had not established a right for individuals to sue and recover damages from federal officers, the Court concluded that the violation gave rise to a private right of action. *Id.* "In the decade that followed, the Court recognized what has come to be called an implied cause of action in two cases involving other constitutional violations." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). In *Davis v. Passman*, 442 U.S. 228 (1979), the Court held that the Fifth Amendment Due Process Clause provided a damages remedy for gender discrimination, and in *Carlson v. Green*, 446 U.S. 14 (1980), the Court held that the Eighth Amendment Cruel and Unusual Punishments Clause

---

[2] The plaintiff alleges violations that occurred after he pled guilty on September 9, 2016. *See* September 9, 2016 Minute Entry, *United States v. Oneal*, 16-CR-21 (filed December 11, 2015). Although the plaintiff was not sentenced until May 31, 2018, *see* May 31, 2018 Minute Entry, the defendant argues that his excessive force claim falls under the Eighth Amendment because he was no longer a pretrial detainee. I agree. *See Morrison v. United States*, No. 17-CV-6779, 2019 WL 5295119, at *4 (S.D.N.Y. Oct. 18, 2019) ("[The plaintiff] pled guilty and was awaiting sentencing . . . . While the constitutional status of convicted, but not sentenced, defendants remains an unanswered question in this circuit, district courts apply the Eighth Amendment, not the Fifth or Fourteenth Amendments, to individuals in [the plaintiff's] circumstance."); *Stewart v. Schiro*, No. 13-CV-3613, 2015 WL 1854198, at *11 (E.D.N.Y. Apr. 22, 2015) (agreeing with the "weight of authority" that an individual "who at the time of the alleged constitutional deprivation was awaiting sentencing after pleading guilty of a crime and after being convicted upon such a plea" is not a "pretrial detainee"); *Jeanty v. Cty. of Orange*, 379 F. Supp. 2d 533, 539 (S.D.N.Y. 2005) ("[P]laintiff's excessive force claim, which arose after he was convicted but before he was sentenced, is to be analyzed under the Eighth Amendment."); *White v. Hess*, No. 14-CV-3339, 2020 WL 1536379, at *7 (E.D.N.Y. Mar. 31, 2020) ("[T]he Court joins the majority of courts that have concluded that a post-conviction, pre-sentencing inmate is protected by the Eighth Amendment.").

4

provided a damages remedy for failure to provide adequate medical treatment. *See Ziglar*, 137 S. Ct. at 1854-55.

Since these cases were decided, the Court has "adopted a far more cautious course before finding implied causes of action;" "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1855, 1857 (quoting *Iqbal*, 556 U.S. at 675). In determining whether there is an implied cause of action under the Constitution, "separation-of-powers principals are or should be central to the analysis. The question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Id.* at 1857. The Court has set out a "two-step inquiry" to determine whether to extend *Bivens*: the first step is to "inquire whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants,'" and the second step is to "ask whether there are any 'special factors that counsel hesitation' about granting the extension." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) and *Ziglar*, 137 S. Ct. at 1857 (citations, quotation marks and alterations omitted)). "[T]he new-context inquiry is easily satisfied." *Ziglar*, 137 S. Ct. at 1865. "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1860.

The plaintiff makes First amendment claims, equal protection claims, and excessive force claims under the Eighth Amendment. These claims are different from the claims in *Bivens*, *Davis* and *Carlson*. None of these cases recognized a *Bivens* remedy for First Amendment

5

retaliation. *See Iqbal*, 556 U.S. at 675 ("[W]e have declined to extend *Bivens* to a claim sounding in the First Amendment."); *White v. Hess*, No. 14-CV-3339, 2020 WL 1536379, at *6 (E.D.N.Y. Mar. 31, 2020) ("Nationwide, district courts seem to be in agreement that, post-*Abbasi*, prisoners have no right to bring a *Bivens* action for violation of the First Amendment.") (quoting *Bistrain v. Levi*, 912 F.3d 79, 96 (3d. Cir. 2018)) (internal quotation marks and alterations omitted). Although *Carlson* recognized a remedy for violation of a prisoner's Eighth Amendment rights, the plaintiff was claiming failure to provide adequate medical treatment, not excessive force. *See Ojo v. United States*, No. 16-CV-4112, 2019 WL 3852391, at *13 (E.D.N.Y. Aug. 15, 2019) ("To the extent that plaintiff's excessive force claims arise under the Eighth Amendment, there are meaningful differences between plaintiff's allegations of excessive handcuffing and the indifference to serious medical needs at issue in *Carlson*. Since no Supreme Court decision has ever extended *Bivens* to encompass the specific context presented by plaintiff's excessive force claims, this cause of action presents a new *Bivens* context."), *report and recommendation adopted*, 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019). And although *Davis* recognized a remedy for violation of a person's Fifth Amendment rights, the claim at issue was gender discrimination, not an equal protection claim based on treatment in prison.[3] *See Ojo v. United States*, 364 F. Supp. 3d 163, 173 (E.D.N.Y. 2019) (the plaintiff's claim presented a new context because it was "based on a prison policy that distinguishes between groups of people based on their membership in a non-suspect class, rather than their gender").

Because the claims present new contexts, I assess whether there is an alternate process for protecting the plaintiff's rights, and whether special factors counsel hesitation in extending the *Bivens* remedy. *See Ziglar*, 137 S. Ct. at 1857-60. The defendant argues that because the

---

[3] Although the plaintiff claims that others would not have been treated the same way that he was treated, he does not explain the basis for his equal protection claim.

plaintiff had alternative avenues to pursue his claims under the Federal Tort Claims Act ("FTCA") and Prison Litigation Reform Act ("PLRA"), and because Congress—not the courts—should determine whether an action for damages should arise, *Bivens* should not be extended to the plaintiff's claims.

Courts have reached different conclusions on whether the FTCA precludes a *Bivens* remedy. *Compare Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701, 710 (S.D.N.Y. 2020) (the FTCA does not preclude a *Bivens* remedy, and the Supreme Court "has repeatedly emphasized that an FTCA claim is simply not a substitute for a *Bivens* action") (citations and quotation marks omitted) *and Powell v. United States*, No. 19-CV-11351, 2020 WL 5126392, at *10 (S.D.N.Y. Aug. 31, 2020) ("[T]he FTCA facilitates only liability in tort against the United States itself, whereas the *Bivens* remedy vindicates violations of constitutional rights by federal employees . . . The FTCA standing on its own does not give the Court reason to hesitate in extending *Bivens*.") (citations and quotation marks omitted) *with Sosa v. Bustos*, No. 17-CV-417, 2020 WL 1940550, at *4 (S.D.N.Y. Apr. 22, 2020) ("The Supreme Court has . . . held that alternative remedies need not be perfectly congruent to preclude a *Bivens* remedy. Courts in this District have therefore found that, post-*Abbasi*, the FTCA as a potential remedy counsels hesitation in extending a *Bivens* remedy.") (citations and quotation marks omitted) *and Rivera v. Samilo*, 370 F. Supp. 3d 362, 369-70 (E.D.N.Y. 2019) (the FTCA is an "alternative avenue for redress" that "counsel[s] against an implied right of action"). Although this alternative remedy might be enough to preclude a *Bivens* remedy under *Ziglar*, I do not need to decide the issue based on the FTCA alone, since other factors counsel hesitation in allowing a *Bivens* remedy in this case.

> In *Ziglar*, the Supreme Court stated:
>
> [L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation. Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. . . . But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

137 S. Ct. at 1865 (citations omitted); *see also White*, 2020 WL 1536379, at *7 (same); *Sabir v. Williams*, No. 20-CV-8, 2020 WL 3489522, at *4 (D. Conn. June 26, 2020) ("Congress's failure to include a prisoner damages remedy for prisoner abuse in the [PLRA] counsels against extending a *Bivens* damages remedy to inmates seeking to extend *Bivens* in a new context."); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 61 (E.D.N.Y. 2017) ("Congress has been active in the area of prisoners' rights and its actions do not support the creation of a new *Bivens* claim.") (discussing the PLRA), *aff'd*, 755 F. App'x 67 (2d Cir. 2018); *Fulton v. Core Servs. Grp. Inc.*, No. 19-CV-7050, 2020 WL 352495, at *3 (E.D.N.Y. Jan. 21, 2020) (a prisoner who claimed that he was remanded to prison without due process could not state a *Bivens* claim because there were "alternative remedies" available to him, including the PLRA, which "requires an administrative process by which the Bureau of Prisons can itself correct any unconstitutional or . . . undesirable conditions of confinement"); *Ojo*, 2019 WL 3852391, at *14 ("[T]he availability of alternative relief by way of the BOP administrative grievance process and congress's legislation in the area of prisoners' rights are special factors that counsel against recognizing a *Bivens* remedy."); *but see Dixon v. Von Blackensee*, No. 17-CV-7359, 2019 WL 2433597, at *15 (S.D.N.Y. June 11, 2019) ("Relegating the vindication of Constitutional rights to Congress would be depriving federal courts of their principal function."), *on reconsideration in part sub nom. Dixon v.*

8

*Blackensee*, 2020 WL 1489791 (S.D.N.Y. Mar. 27, 2020). Congress' legislative action in the area of prisoners' rights through the PLRA, including by requiring an administrative process, weighs against extending a *Bivens* remedy to the plaintiff's claims.

Courts have recognized additional factors that counsel hesitation in extending the remedy to First Amendment claims, including that an extension "would impose substantial costs, in both time and money, upon individual officers and employees of the federal government, that federal officials' own First Amendment rights could suffer, and there is already an existing patchwork of federal statutes that provide accountability for federal officials." *Ojo*, 2019 WL 3852391, at *14 (citations and quotation marks omitted); *see also Sabir*, 2020 WL 3489522, at *4 ("The *Ziglar* analysis does not suggest affording a *Bivens* remedy for a federal inmate's First Amendment retaliation claim.").

For these reasons, and in light of the Supreme Court's wariness to expand *Bivens*, I conclude that *Bivens* does not give the plaintiff a right of action for his claims.

## II. Sufficiency of Allegations

Even if a *Bivens* remedy were available for the plaintiff's claims, I would find that the plaintiff's allegations were insufficient to state an excessive force claim for compensatory damages, a First Amendment retaliation claim or an equal protection claim.

### a. Excessive Force

Section 1997e(e) of the PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury," and "applies to claims in which a plaintiff alleges constitutional violations." *Thompson v. Carter*, 284 F.3d 411, 416-17

(2d Cir. 2002).[4] While "there is no statutory definition of 'physical injury' as used in section 1997e(e)," the Second Circuit has held that a plaintiff's physical injury must be "more than *de minimis*." *Abreu v. Nicholls*, No. 04-CV-7778, 2011 WL 1044373, at *3 (S.D.N.Y. Mar. 22, 2011) (quoting *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999)), *report and recommendation adopted*, 2012 WL 1079985 (S.D.N.Y. Mar. 30, 2012).

The plaintiff admits that he did not seek medical treatment but claims that he had "soreness" on the left side of his face and a "headache." (ECF No. 25 at 4.) He also claims that he experienced "paranoia, mental depression" and "nervousness around other inmates [and] officers," and was "scared" for his safety. (*Id.*)

These allegations are insufficient to meet the "physical injury" requirement of Section 1997e(e). As I concluded when I dismissed the plaintiff's original complaint, the plaintiff's allegations of paranoia, depression and nervousness do not satisfy the physical injury requirement. (*See* ECF No. 21 at 4 (collecting cases).) The plaintiff's new allegations of soreness and a headache are also insufficient. *See Nelson v. McGrain*, No. 12-CV-6292, 2019 WL 2590608, at *2 (W.D.N.Y. June 25, 2019) ("Courts within this district have defined 'mental or emotional injuries' to include headaches."); *McCloud v. Tureglio*, No. 07-CV-650, 2008 WL 1772305, at *8 (N.D.N.Y. Apr. 15, 2008) ("*[R]epeated punches* by correctional officials . . . have been specifically held by district courts in this Circuit to not constitute *physical injury* under the PLRA, where they resulted in only superficial and temporary irritations or abrasions.") (collecting cases).

---

[4] Section 1997e(e) limits recovery of damages for mental and emotional injury with no showing of physical injury, but "it does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." *Thompson*, 284 F.3d at 416. It is not clear from the complaint that the plaintiff seeks nominal or punitive damages, but if he did, the PLRA's physical injury requirement would not bar this relief.

10

**b. Retaliation**

"[T]o survive a motion to dismiss a complaint, a plaintiff asserting First Amendment retaliation claims must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citation and quotation marks omitted).

The plaintiff alleges that Officer Rodriguez ordered him to keep his "mouth shut," "taunted" him, called him a "snitch," and came to his cell and "told [him] she had something for [him]." (ECF No. 25 at 4, 9.) He also claims that Officer Rodriguez told officers and inmates that he was "snitching," "which incited inmates and officers to start calling [him] a snitch," and that months later an inmate assaulted the plaintiff and told him "this is what [he] get[s] for snitching." (*Id.* at 9.)

As I concluded when I dismissed the plaintiff's original complaint, the defendant's alleged taunts and threats to the plaintiff do not constitute an adverse action against him. (*See* ECF No. 21 at 4-5 (collecting cases).) Although an assault may constitute an adverse action, the plaintiff's allegations about the assault are conclusory and lack detail; the plaintiff says that he "was assa[u]lted in [his] cell" but does not explain what the assault entailed. Moreover, he does not allege that Officer Rodriguez directed the inmate to assault him or that she played a role in the assault, although he does claim that her comments incited inmates. Thus, these allegations are insufficient to state a First Amendment retaliation claim.

**c. Equal Protection**

"[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is so unjustifiable as to be violative of due process." *Weinberger v.*

*Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975) (citation and quotations omitted). The "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Id.*; *see also Neary v. Gruenberg*, 730 F. App'x 7, 10 n.2 (2d Cir. 2018) (summary order) ("[T]he Court has interpreted the guarantees of equal protection under the Fourteenth and Fifth Amendments as being coextensive."). To state a violation of the Equal Protection Clause, the plaintiff "must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).

The plaintiff claims that "[o]ther[]s similarly situated would not have been treated as [he] was because officers are not trained to act in an unfair and unprofessional manner." (ECF No. 25 at 10.) However, the plaintiff does not allege any facts that support his claim that he was treated differently than others who were similarly situated. Without more, the plaintiff's conclusory allegation that he was treated differently is insufficient to state an equal protection claim. *See, e.g., Watkins v. Doe*, 19-CV-1561, 2020 WL 1846777, at *5 (N.D.N.Y. Apr. 13, 2020) ("[The] plaintiff alleges in conclusory fashion that defendants . . . violated his equal protection rights. The amended complaint, however, lacks any allegations in support of this claim. Indeed, the amended complaint does not contain any allegations of purposeful discrimination directed at an identifiable or suspect class, and fails to identify any individuals treated differently than plaintiff under a similar situation.").

### III. Additional Claims

Although there is no *Bivens* remedy for the plaintiff's constitutional claims, he may be able to assert state law claims under the FTCA. The FTCA permits some suits for damages against the United States. *See Olivo v. Doe*, No. 20-CV-231, 2020 WL 616576, at *3 (E.D.N.Y.

Feb. 10, 2020) ("The FTCA waives sovereign immunity and permits some suits for damages against the United States 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'") (quoting 28 U.S.C. § 1346(b)(1)); *Ojo v. United States*, No. 16-CV-4112, 2020 WL 828076, at *8 (E.D.N.Y. Feb. 20, 2020) ("[T]he FTCA does not bar claims for certain intentional torts when they are committed by 'investigative or law enforcement officers,'" including "BOP employees.") (citations omitted). In order to bring a claim under the FTCA, a plaintiff must name the United States as a defendant, *see* 28 U.S.C. §§ 2674, 2679, and must show that he exhausted his administrative remedies by filing a tort claim with the appropriate agency—such as the Bureau of Prisons—"within two years after such claim accrues," 28 U.S.C. § 2401.

The plaintiff does not name the United States as a defendant, specifically assert FTCA claims or describe how he exhausted administrative remedies. His initial complaint, however, named the City of New York (*see* ECF No. 1), suggesting that he did not intend to limit his claims to Officer Rodriguez, and his amended complaint states that he "exh[a]usted administrative remed[ie]s" (ECF No. 25 at 4). In an abundance of caution, I allow the plaintiff to amend his complaint to add the United States as a party and assert any claims under the FTCA. The plaintiff should explain how he exhausted his administrative remedies for any FTCA claims.

## CONCLUSION

For the reasons stated above, I grant the defendant's motion to dismiss. However, I give the plaintiff leave to amend his complaint within 30 days of this order. The new complaint must

be captioned "Second Amended Complaint" and bear the same docket number as this order (18-CV-3287 (AMD) (LB)). The plaintiff is advised that any amended complaint will completely replace the original complaint and the first amended complaint, so he should not rely on any allegations in his prior complaints. If the plaintiff does not file an amended complaint within 30 days, judgment dismissing this action will enter.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
September 30, 2020